UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

ROBERT ROMERO,

    Plaintiff,

v.                                                          Civ. No. 24-6 GJF/SCY

TRADER JOE'S COMPANY and
PARKER STALEY,

    Defendants.

### ORDER OVERRULING DEFENDANT TRADER JOE'S COMPANY'S OBJECTIONS TO THE COURT'S ORDER ON PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS

THIS MATTER is before the Court on Defendant Trader Joe's Company's ("Trader Joe's") Rule 72(a) Objections to the Court's Order on Plaintiff's Motion to Compel. ECF 37. Plaintiff responded in opposition [ECF 41], and Trader Joe's replied [ECF 46]. The Objections are now fully briefed. For the reasons that follow, the Court concludes that Trader Joe's did not carry its burden to demonstrate that Magistrate Judge Yarbrough's Order Granting in Part and Denying in Part Plaintiff's Motion to Compel [ECF 34] was either clearly erroneous or contrary to law. Accordingly, the Court **OVERRULES** the objections and orders that, absent the parties' agreement to a different schedule or a motion for a reasonable extension of time, the documents responsive to Requests for Production 13 and 14 shall be produced, pursuant to the limitations imposed by Judge Yarbrough, not later than thirty (30) days from the date of this Order.

**I.    BACKGROUND**

In his Amended Complaint, Plaintiff broadly alleges that Defendants engaged in "an ongoing campaign of discrimination, harassment and retaliation against [him] because of his race and/or because he complained of discrimination based on race and/or national origin by

1

Defendants." ECF 1-1 ¶ 54. More specifically, he asserts that "Defendant Staley engaged in racially discriminatory conduct directed at [him] and other Hispanic employees, especially male Hispanic employees," whereas Staley "treated Anglo male employees and female employees in a preferential manner." *Id*. ¶¶ 9–10. Plaintiff details instances of allegedly discriminatory conduct against himself and his Hispanic coworkers [*id.* ¶¶ 9–23], including an October 23, 2019 incident during which Defendant Staley confronted him for not wearing a name badge and allegedly "assaulted and battered [him] by repeatedly jamming his finger into [his] chest with force" while "screaming and yelling" at him [*id.* ¶ 18].

The Amended Complaint alleges that, in response to Defendant Staley's ongoing discriminatory conduct, Plaintiff and fellow crew members "repeatedly called" Trader Joe's Regional Manager, Phil Wofford, to complain. *Id.* ¶¶ 16, 20. Yet, according to Plaintiff, Wofford and Trader Joe's failed to conduct an adequate investigation into those complaints, which "constituted a pattern and practice that permitted or condoned . . . discriminatory and retaliatory conduct of Defendant Staley." *Id.* ¶ 50.

In the weeks that followed the October 23, 2019 incident, Plaintiff filed a formal allegation of race discrimination against Defendants with the Human Rights Division of the New Mexico Department of Workforce Solutions, *id.* ¶ 24, and on January 11, 2020, he contacted New Mexico State Police, *id.* ¶ 31. Plaintiff contends that a Senior Vice President of Trader Joe's attempted to interfere with the State Police investigation of the October 2019 incident, including by suggesting that the officer handling the investigation, Officer Negrete, was biased in Plaintiff's favor. *Id.* ¶¶ 38–43.

On January 17, 2020, Wofford advised Plaintiff that he was suspended. *Id.* ¶ 47. On January 22, 2020, Officer Negrete completed his report in which he explained that the sole witness to the

October 2019 incident "did not want 'to get involved'" and concluded that there was insufficient evidence of a criminal assault or battery. *Id*. ¶ 48. Six days later, Wofford terminated Plaintiff on the basis that Trader Joe's felt "uncomfortable" about Plaintiff having filed a complaint with the State Police. *Id*. ¶ 49.

At issue in Defendant's Objections are two requests for production ("RFPs") by Plaintiff to Trader Joe's. In RFP 13, Plaintiff sought

> [c]opies of any and all internal complaints, grievances, EEOC and New Mexico Human Rights charges, tort claim notices, letters threatening a lawsuit and lawsuits filed against Defendant and/or any employee of Defendant Trader Joe's arising from any store located in the region managed by Phil Wofford alleging race discrimination, racial harassment, retaliation and/or assault and battery made from January 1, 2013, through December 31, 2022.

ECF 17-8 at 3. In RFP 14, Plaintiff sought "documents concerning any disciplinary action taken as a result of [the] investigations" that followed from the complaints enumerated in RFP 13. *Id*. at 4. Trader Joe's produced responsive documents for only the Santa Fe store where Plaintiff and Defendant Staley worked, asserting that RFPs 13 and 14 were "overly broad and not reasonably calculated to lead to the discovery of admissible evidence, as [they] were not properly limited in scope and time." *Id*. at 3–4. Plaintiff agreed to narrow the scope of the RFPs to documents arising only from complaints in Trader Joe's stores in New Mexico and Colorado, rather than in all of the stores in Wofford's region, and to the period from January 1, 2015, to December 31, 2021. ECF 34 at 23 (citing ECF 17 at 4). The parties were unable to reach a compromise, and Plaintiff's Motion to Compel followed. *See* ECF 17.

In considering that motion, Judge Yarbrough reasoned that the documents sought in RFPs 13 and 14 were relevant in two ways: as pattern and practice evidence and as comparator evidence. ECF 34 at 3. With respect to pattern and practice, Judge Yarbrough observed that, in the absence of direct evidence of discriminatory intent, employees like Plaintiff are often left to rely on indirect

3

or circumstantial evidence to prove their discrimination claims. *Id*. He explained that "[a]s a general rule, the testimony of other employees about their treatment by a defendant is relevant to the issue of the employer's discriminatory intent." *Id*. (quoting *Spulak v. K Mart Corp.,* 894 F.2d 1150, 1156 (10th Cir. 1990), *abrogated in art on other grounds by Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993)). Noting that pattern evidence may support an inference of bias against a protected class, Judge Yarbrough concluded that evidence of how Trader Joe's treated other employees who made complaints similar to those made by Plaintiff was discoverable "pattern and practice" evidence. *Id*. at 4. Even so, he agreed with Trader Joe's that only evidence related to retaliation for complaints of racial discrimination and/or racial harassment was discoverable. *Id*.

Turning to the issue of comparator data, Judge Yarbrough reasoned that it too was relevant to Plaintiff's discrimination claims and discoverable. *Id*. (citing *McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006)). Rejecting Trader Joe's position that an employee was only similarly situated to Plaintiff if he or she worked at the same store location, Judge Yarbrough discerned that the intent of the "same supervisor" rule necessitated that comparator evidence relate to how the person who terminated Plaintiff (*i.e*., Wofford) addressed similar complaints of discrimination. *Id*. at 6. Judge Yarbrough posited that if Wofford received numerous complaints about assaults or batteries from store employees but terminated only those employees who also complained of racial discrimination, that evidence would be relevant to Plaintiff's claims. *Id*. Similarly, he explained that evidence that Wofford routinely fired employees who made complaints about racial discrimination would be relevant, regardless of where the terminated employees worked. *Id*.

Finally, Judge Yarbrough addressed Trader Joe's argument that the information sought in RFPs 13 and 14 was not proportional to the needs of a single-employee discrimination case. *Id*.

4

(citing ECF 19 at 8–10). In his view, Trader Joe's underlying premise was flawed, as pattern and practice or comparator evidence is "crucial" even for single-employee indirect discrimination claims. *Id*. Indeed, he described such evidence as important enough to "justify a proportionally greater burden" on Trader Joe's. *Id*. Acknowledging Trader Joe's allegations that it would be required to conduct manual searches and individually assess employee files, Judge Yarbrough noted that Trader Joe's had not provided "any detail, such as the number of files potentially involved [or] the estimated hours required to search through them." *Id*. Nor had Trader Joe's explained why its burden had not been sufficiently mitigated by Plaintiff's unilateral offer to restrict the stores to only those in New Mexico and Colorado during a narrower window of time. *Id*. "Without further information" showing the burden on Trader Joe's, Judge Yarbrough was left to "assume [Plaintiff's] compromise offer substantially lessen[ed] the burden on [Trader Joe's] and . . . render[ed] the [RFPs] proportionate to the needs of the case." *Id*. at 7.

Ultimately, Judge Yarbrough ordered Trader Joe's to respond to RFPs 13 and 14 but—consistent with Plaintiff's compromise offer—only as to documents concerning complaints by Trader Joe's employees in its New Mexico and Colorado stores and only for the time period from January 1, 2015 to December 31, 2021.[1] ECF 34 at 7.

## II.     LEGAL STANDARD

Rule 72(a) of the Federal Rules of Civil Procedure authorizes a party to object to a magistrate judge's non-dispositive order. "The [presiding] judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). This rule finds its statutory foothold in 28 U.S.C. § 636(b)(1)(A),

---

[1] As discussed above, Judge Yarbrough also limited the responsive documents to those involving retaliation for complaints of racial discrimination and/or racial harassment and excluded documents involving retaliation for other varieties of complaints. ECF 34 at 7.

5

which empowers the presiding judge "to reconsider any [non-dispositive] pretrial matter . . . where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." A presiding judge must "defer to the magistrate judge's ruling unless it is clearly erroneous or contrary to law." *Hutchinson v. Pfeil*, 105 F.3d 562, 566 (10th Cir. 1997).

To overturn a magistrate judge's decision as clearly erroneous, the presiding judge must have "a definite and firm conviction that a mistake has been committed." *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988). With respect to the "contrary to law" standard, the presiding judge conducts a plenary review of the magistrate judge's legal determinations, nullifying the order only if it applied an incorrect legal standard. *See* Charles Alan Wright, et al., 12 Fed. Practice & Proc. § 3069, at 350 (4th ed. 2018). "In sum, it is extremely difficult to justify alteration of the magistrate judge's non-dispositive actions by the [presiding] judge." *Id.* at 350–51.

### III.  ANALYSIS

Trader Joe's objects to three aspects of Judge Yarbrough's discovery order: (1) that the temporal limitation he imposed on the RFPs is overly broad; (2) that the scope of the discovery permitted, including the geographic scope, is not rationally related to facts of the case; and (3) that Plaintiff's RFPs, as modified by the Court, are not sufficiently proportional to the needs of the case. ECF 37. As explained below, however, none of Trader Joe's objections directs the Court to any portion of Judge Yarbrough's Order that is clearly erroneous or contrary to law. It seems that Trader Joe's instead would have the Court decide anew the discovery issues addressed by Judge Yarbrough's order. But Trader Joe's is not entitled to *de novo* review. Affording the appropriate deference due to Judge Yarbrough's discovery order, this Court has little difficulty concluding that Trader Joe's is not entitled to relief under Rule 72(a). After all, the record demonstrates that Judge

Yarbrough thoroughly considered the parties' positions, thoughtfully evaluated the relevance and proportionality of the documents sought in RFPs 13 and 14 in accordance with applicable law, and reached a decision that struck a well-reasoned balance between the competing interests.

To begin, Judge Yarbrough observed that Federal Rule of Civil Procedure 26(b)(1) permits parties to

> obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within the scope of discovery need not be admissible in evidence to be discoverable.

ECF 34 at 3 (quoting Fed. R. Civ. P. 26(b)(1)). Using this procedural rule as his guide, Judge Yarbrough highlighted the relevance of the discovery sought, the importance of that discovery to Plaintiff's claims, and Trader Joe's failure to adequately explain and quantify its burden in producing responsive documents. With respect to the relevance and importance of the discovery at issue, Trader Joe's characterizes Plaintiff's "pattern and practice" and "motive and intent" theories as "new" theories manufactured to support the breadth of discovery they seek. ECF 46 at 2, 5. To the contrary, Plaintiff's Amended Complaint clearly alleges that Defendant Staley engaged in a pattern of racial discrimination directed at Plaintiff and fellow Hispanic workers and that Wofford and Trader Joe's, in turn, had a pattern and practice of permitting or condoning such conduct. *See, e.g.*, ECF 1-1 ¶¶ 9–23, 50. Trader Joe's argument that there is only a "tenuous" connection between Plaintiff's "pattern and practice" theory and RFPs 13 and 14 is unconvincing. Judge Yarbrough methodically explained the relevance of pattern and practice evidence and comparator evidence to Plaintiff's claims, relying on applicable case law, such that the Court has no reservations as to the soundness of his reasoning.

To the extent Trader Joe's now contends that Judge Yarbrough erred in compelling the production of a temporally overbroad scope of documents, the Court is likewise unpersuaded. As an initial matter, it appears that Trader Joe's waived its temporal scope argument by not asserting it in response to Plaintiff's Motion to Compel. *See* ECF 19; *see also Coll v. Stryker Corp.,* No. 14-cv-1089 KG/SMV, 2017 WL 3190658, at *7 (D.N.M. May 24, 2017) ("theories raised for the first time in objections to a magistrate judge's [order] are deemed waived") (quoting *United States v. Garfinkle*, 261 F.3d 1030, 1031 (10th Cir. 2001)). Even on its merits, Trader Joe's argument fails. According to Plaintiff, he seeks "documents for the period when [Wofford] was Regional Vice-President up to two years after the date Plaintiff was fired by him," which he identifies as the period between January 1, 2015[2] and January 28, 2022. *See* ECF 41 at 10. In compelling the production of responsive documents from January 1, 2015 to December 31, 2021, Judge Yarbrough emphasized that evidence of the treatment of other employees is relevant and often critical to demonstrate discriminatory intent. ECF 34 at 3. That some responsive documents may have been generated in the two years following Plaintiff's termination, while Wofford still served as Regional Vice President, does not render the documents irrelevant or undiscoverable. Rather, post-termination documents may still bear on Trader Joe's pattern and practice of discrimination. *See Martinez v. Cornell Corrections of Tex.*, 62 F.R.D. 215 (D.N.M. 2005) (reasoning that post-incident documents regarding allegations of sexual misconduct by employees at a detention facility were discoverable); *Lindquist v. Arapaho County*, No. 10-cv-2264-REB-MEH, 2011 WL 3163095, *2 (D. Colo. July 26, 2011) (concluding that post-incident conduct during the two years following the plaintiff's arrest was relevant to show an unconstitutional policy, custom or practice

---

[2] In its Objections, Trader Joe's contends that Wofford was not promoted to Regional Vice President until March 2015, whereas Plaintiff suggests that he began that role in January 2015. The Court does not consider this minor discrepancy to be of consequence to its analysis.

and therefore discoverable). The Court is satisfied that complaints made within two years of Plaintiff's termination are sufficiently close in time to be relevant and discoverable. In other words, the temporal scope imposed by Judge Yarbrough was neither clearly erroneous nor contrary to law.

The Court also perceives no error in the scope, including the geographical scope, of discovery that Judge Yarbrough compelled. For its part, Trader Joe's suggests that it was unreasonable for Judge Yarbrough to compel production of any complaint by an employee of a New Mexico or Colorado Trader Joe's store, regardless of whether Wofford had knowledge of that complaint. ECFs 37 at 2–3; 46 at 5. In support, it posits that "a complaint made by a Crew employee in Colorado to a Mate (assistant manager) based on disparate treatment allegedly based on race would be responsive to Request for Production No. 13." ECF 37 at 3. Plaintiff points to written policies and discovery responses that appear to dispel concerns that documents responsive to RFPs 13 and 14 might encompass complaints by a "Crew" employee to a "Mate" about which Wofford would not have known. *See* ECFs 36-1; 36-2; 36-6; 36-7. Taken together, the documents upon which Plaintiff relies suggest that Wofford, in coordination with Trader Joe's Human Resources department, received and investigated discrimination complaints for the stores within Wofford's region, including those in New Mexico and Colorado. Trader Joe's has not provided any information to suggest that discrimination complaints were instead handled at the store level. As such, it was entirely reasonable for Judge Yarbrough to compel the production of documents related to complaints of discrimination or retaliation made by employees in a subset of the stores within Wofford's region without specifying that Wofford must have personally received and investigated those complaints. The scope of Judge Yarbrough's discovery order was neither overbroad nor clearly erroneous and is consistent with, or narrower than, other discovery orders in

employment discrimination cases in this District. *See, e.g.*, *Reilley v. K-Mart*, No. 11-cv-1089 WJ/SMV, 2013 WL 12330089, at *2 (D.N.M. May 20, 2013) (concluding that because the plaintiff alleged that the regional manager had directed its subordinate district managers to "weed out" older store managers, the plaintiff had shown a particularized need for and the relevance of *region*-wide discovery, rather than the *district*-wide discovery to which the defendant sought to limit its responses); *Donlin v. Petco Animal Supplies Stores*, Inc., Civ 17-0395 JCH/JHR, 2017 WL 4541362 (D.N.M. 2017) (determining that the scope of discovery for discrimination complaints for an almost five-year period was not limited to a single work unit but was *company*-wide, where the corporate employer had a single team that handled all discrimination complaints and investigations for its 25,000 employees).

Trader Joe's position as to proportionality is curious. It maintains that RFPs 13 and 14 were "so broad on their face" that it could not feasibly evaluate the burden and expense associated with searching for responsive documents. ECF 37 at 3–4. Consequently, it laments that Judge Yarbrough did not have the benefit of data illustrating its burden—data it failed to timely provide—when he decided Plaintiff's Motion to Compel. *Id*. at 4 n.1. To be sure, Trader Joe's failure to provide "any detail, such as the number of files potentially involved [or] the estimated hours required to search through them," led Judge Yarbrough to the conclusion that it had not met its burden to show that the RFPs were unduly burdensome or disproportionate to the needs of the case. ECF 34 at 6. Now, in a belated effort to satisfy that burden, Trader Joe's appends to its Objections the Declaration of Issac Chitica, Director of Human Resources, in which Chitica estimates that a manual review of responsive documents would cost Trader Joe's between $31,000 and $84,000. *See* ECF 37-1 ¶ 18. Chitica attests that "[g]iven the timing of Wofford's promotion to Regional Vice President, the fluctuating size of his region . . . , and the overly broad nature of

10

the retaliation claims, Trader Joe's . . . was unable to quantify the amount of work that would have been required to comply with the original requests within the time period for response." *Id*. ¶ 21. Emphasizing that Plaintiff's lost wages claim amounts to merely $88,000, Trader Joe's advises that it can now "definitively confirm the burden and expense of the proposed discovery on Defendant will far outweigh its proposed benefit to Plaintiff." ECF 37 at 4.

      The problem for Trader Joe's is that it did not endeavor to quantify this burden to Judge Yarbrough while the issue was pending before him. Nor did it seek an extension of time to craft a response to Plaintiff's Motion to Compel that would properly support its position that the RFPs were unduly burdensome. Instead, it made a bald assertion of "undue burden" without presenting any evidence to support that claim. *See* ECF 19. Thus, based upon the submissions and information before him, it was not unreasonable or clearly erroneous for Judge Yarbrough to compel the discovery he compelled over Trader Joe's objection. As he acknowledged, pattern and practice and/or comparator evidence is "crucial" even for single-employee indirect discrimination claims and is of such importance that it "justif[ies] a proportionally greater burden" on the employer in producing such discovery. ECF 34 at 6. Further justifying a proportionally greater burden on Trader Joe's here are its exclusive access to the documents at issue, its significant resources as a large Fortune 500 company, and the importance of the issues at stake (*i.e.*, the potential vindication of Plaintiff's rights against racial discrimination and retaliation).

      Trader Joe's attempt, in the context of its Rule 72(a) objections, to quantify its burden in responding to RFPs 13 and 14 is tardy, unavailing, and dismissive of Rule 72(a)'s deferential standard of review. Simply put, the Court will not consider in the first instance a declaration not presented for Judge Yarbrough's consideration when he resolved the underlying dispute. Although Trader Joe's includes a footnote inviting "a brief discovery status conference if Judge Yarbrough

is inclined to revisit the scope of his own Order based on the supplemental data provided in Exhibit A," that invitation was made within objections addressed to the presiding judge under Rule 72(a) rather than as part of a motion for reconsideration directed to Judge Yarbrough. The undersigned will not engage in that reconsideration on Judge Yarbrough's behalf. Under Rule 72(a)'s standard, Trader Joe's has not shown that the determination by Judge Yarbrough that Trader Joe's failed to meet its burden of establishing undue burden was clearly erroneous or contrary to law.

**IT IS THEREFORE ORDERED** that Defendant Trader Joe's Rule 72(a) Objections to the Court's Order on Plaintiff's Motion to Compel [ECF 37] are **OVERRULED**. **IT IS FURTHER ORDERED** that, absent the parties' agreement to a different schedule or a motion for a reasonable extension of time, the documents responsive to RFPs 13 and 14 shall be produced, pursuant to the limitations imposed by Judge Yarbrough, not later than thirty (30) days from the date of this Order.

**SO ORDERED.**

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
*Presiding by Consent*